**STATE of Missouri, Plaintiff–Respondent,**

v.

**Edwin BROWN, Defendant–Appellant.**

No. 56387.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 27, 1990.

Donald V. Nangle, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

A jury convicted defendant of second degree assault; the trial court, in accordance with the jury's assessment, fined him $1000. He appeals; we affirm.

The state's evidence was that on the evening of January 16, 1988, a tavern owner called the police to report a disturbance created by two persons who had been drinking. Police Sergeant Lowell responded to the call and found that the persons had already left. Defendant and his brother had been at the tavern earlier in the evening; defendant was asked to leave and his brother followed. As Sergeant Lowell left the tavern, he observed defendant up the street yelling obscenities at him. Defendant retreated into his residence at 2003 Geyer.

Approximately fifteen minutes later, Sergeant Lowell heard a report from the dispatcher that a call for police had been made from defendant's residence. Lowell returned to the scene. Upon arriving, Lowell observed that other police officers had already approached the residence, knocked on the door and received no response. The tavern owner informed the police that defendant was involved in the earlier disturbance and was now inside the residence at 2003 Geyer. Sergeant Lowell, concluding that an intoxicated person was inside 2003 Geyer, departed, but 40 minutes later was dispatched back to the scene to respond to several 911 calls from 2003 Geyer wherein the caller had used obscenities and cursed the police. Lowell, along with two other officers responding to the call, knocked on the front door, announced they were the police and demanded entry, but again got no response. A voice from inside was yelling obscenities at the officers.

All three police officers then heard a female scream. Sergeant Lowell stated, "We're going to have to get inside this house," and he unsuccessfully attempted to kick the door in. He broke the glass on the side of the door and unlocked the door from the inside. He entered the building followed by the two other officers. Defendant, whom Lowell recognized from earlier in the evening, was standing in the middle of the room; two other men were seated. Defendant hurled a hammer at Lowell; it passed to the left of him, ricocheted off two walls and landed on the floor. Lowell informed defendant he was under arrest. Defendant, who was considerably taller than Lowell, raised his beer bottle to his mouth, finished it, and as Lowell approached him, brought the beer bottle down as if to strike Lowell. Lowell then struck defendant twice in the head with his

nightstick. Two women and a man were seated on a bed in a back room. Lowell asked them if they were O.K., and they responded that they were just drinking.

■ In his first point, movant contends the trial court erred in overruling his motion to suppress evidence of the assault on Sergeant Lowell. He argues that the police entry was illegal and in violation of the Fourth Amendment and that all evidence resulting from the entry was "fruit of the poisonous tree." Both defendant and the state frame the issue in terms of whether there were sufficient exigent circumstances to obviate the need for a warrant. They rely on cases such as *State v. Epperson*, 571 S.W.2d 260 (Mo. banc 1978) and *State v. Butler*, 676 S.W.2d 809 (Mo. banc 1984). Were this the dispositive issue, and under our standard for reviewing the trial court's ruling on a motion to suppress, *See State v. Tippett*, 588 S.W.2d 742, 743 (Mo.App. 1979), we would have to conclude that the trial court's ruling was supported by the evidence. Sergeant Lowell had seen defendant yelling obscenities at him earlier in the evening, knew he was intoxicated, and knew he was inside the residence at 2003 Geyer. He was also aware that several calls had been made from that residence to 911 wherein the caller had used profanity. Obscenities were emanating from inside the residence. Finally, all three officers testified they heard a female scream—the first female voice they had heard there that night. "Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of assistance." *Root v. Gauper*, 438 F.2d 361, 364 (8th Cir.1971). Here, there was sufficient evidence to support the trial court's conclusion that the officers' decision to enter the residence was reasonable.[1]

■ In this case, however, regardless of whether the officers' entry was legal, another reason supports the trial court's ruling on the motion to supress. The crimes with which defendant was charged occurred after the officers' entry. The officers did not enter to seize evidence of a crime already committed. Nor did they enter to witness ongoing criminal activity. The officers entered, and a crime, assault, was committed upon Sergeant Lowell. The exclusionary rule, which defendant seeks to invoke, does not apply in these circumstances. *See, Commonwealth v. Saia*, 372 Mass. 53, 360 N.E.2d 329 (1977); *State v. Miller*, 282 N.C. 633, 194 S.E.2d 353 (1973); *People v. Townes*, 41 N.Y.2d 97, 359 N.E.2d 402, 390 N.Y.S.2d 893 (1976). Taking defendant's argument to its logical extreme, defendant could have murdered officer Lowell, and any and all evidence of the murder would be inadmissible due to the officers' purportedly illegal entry. "Application of the exclusionary rule in such a fashion would in effect give the victims of illegal searches a license to assault and murder the officers involved...." *Miller*, 194 S.E.2d at 358. Point denied.

■ In his remaining point, defendant contends the trial court erred in allowing a tape recording of the 911 calls from 2003 Geyer to be played to the jury. He argues the tape's content was irrelevant and that the state failed to lay a proper foundation. As to the relevancy claim, we believe the recording was relevant to explain part of the reason underlying the officers' actions. *See eg. State v. Churchir*, 658 S.W.2d 35, 37–8 (Mo.App.1983). The state attempted to lay a foundation for the recording through the testimony of a person who spliced portions of the original reel-to-reel recordings onto the cassette. No one testified that the original recordings were authentic, and thus we do not believe a complete foundation was laid. Nonetheless, we can perceive no prejudice to defendant resulting from the playing of the tape. The state did not contend at trial that the voice on the tape was defendant's. Moreover, defendant's guilt for the crime of assault was established by other, unrelated evi-

---

1. As Justice (then Judge) Cardozo observed, "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal." *Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1921).

dence, and the playing of the recording had no effect on this evidence. "Error which in a close case might call for reversal may be disregarded as harmless where the evidence of guilt is strong." *State v. Page*, 577 S.W.2d 174, 177 (Mo.App.1979).

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.