250 N.J. Super. 173 (1991)
593 A.2d 827
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERTO CASIMONO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 20, 1991.
Decided July 25, 1991.
*176 Before Judges SHEBELL, HAVEY and SKILLMAN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Philip L. Maier, Designated Counsel, of counsel and on the brief).
W. Michael Murphy, Jr., Morris County Prosecutor, attorney for respondent (Joseph Connor, Jr., Assistant Prosecutor, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted and jointly tried along with codefendants Bienvenido Guerrero and Nelson Trimino for conspiracy to possess cocaine with the intent to distribute, in violation of N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-10a(1), N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1); possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1); possession of cocaine in a quantity of five ounces or more, with at least 3.5 grams of the pure free base drug, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1); aggravated assault upon a law enforcement officer while acting in the performance of his duties, in violation of N.J.S.A. 2C:12-1b(5)(a); hindering apprehension by destroying or concealing evidence, in violation of N.J.S.A. 2C:29-3b(1); resisting arrest, in violation of N.J.S.A. 2C:29-2a; and attempting to tamper with physical evidence, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:28-6(1). A jury acquitted defendant of aggravated assault but convicted him of the remaining charges. The court merged defendant's convictions for conspiracy and possession of cocaine into his conviction for possession with the intent to distribute and sentenced him for this offense to an eighteen year term of imprisonment, with six years of parole ineligibility. In addition, the court imposed a consecutive one year term of imprisonment for resisting arrest. Finally, the court imposed a five year term of imprisonment for hindering apprehension, which was made concurrent with defendant's *177 sentences for possession with the intent to distribute and resisting arrest. Defendant's conviction for attempting to tamper with physical evidence was merged into his conviction for hindering apprehension.
On appeal, defendant makes the following arguments:
I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS.
II. IMPROPER QUESTIONS BY THE STATE AND IMPROPER COMMENTS DURING THE STATE'S SUMMATION REQUIRES THAT THE DEFENDANT'S CONVICTIONS BE REVERSED.
III. THE SENTENCE IMPOSED BY THE TRIAL COURT IS IMPROPER AND THE MATTER SHOULD BE REMANDED FOR RESENTENCING.
We conclude that the pat down searches of defendant and codefendant Guerrero violated their rights under the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. However, we further conclude that the evidence upon which defendant's convictions were based was not tainted by the illegality of those searches. We also conclude that defendant's other arguments are clearly without merit and do not require discussion. R. 2:11-3(e)(2). Accordingly, we affirm defendant's convictions.

I
The only evidence presented on defendant's motion to suppress was the testimony of one of the arresting officers, State Trooper Neil DeAngelis. Thus, the relevant facts are essentially undisputed.
Defendant was a front seat passenger in an automobile being operated by codefendant Bienvenido Guerrero on Route 80 around midnight on January 31, 1988. After observing Guerrero change lanes several times without signaling, DeAngelis and another State Trooper, Anthony DeMaio, directed Guerrero to pull the car over to the shoulder of the road. As the car was pulling over, DeAngelis observed defendant bend over out of view. The trooper characterized this movement as "furtive." *178 After the car stopped, Guerrero got out and DeAngelis directed defendant also to get out of the car.
The troopers conducted pat down searches of both Guerrero and defendant. Guerrero resisted the pat down search by DeMaio, first refusing to take his hand out of his right front pocket and then throwing something from his pocket over the guardrail located along the shoulder of the roadway. DeAngelis went to the aid of DeMaio, at which point defendant returned to the car, where he retrieved a large brown paper bag which he threw over the guardrail. DeAngelis returned to defendant and attempted to subdue him while DeMaio continued in his efforts to subdue Guerrero. As the two troopers were rolling on the ground with defendant and Guerrero, a third occupant of the car, codefendant Nelson Trimino, got out of the back seat, jumped into the front seat and drove away. Both troopers shot at the fleeing vehicle. They then handcuffed Guerrero and defendant and pursued Trimino, who abandoned the vehicle, which had its back tires shot out, approximately a half mile away. Trimino was apprehended later that day and a search of the area below the guardrail revealed a dollar bill containing cocaine residue and a brown paper bag containing 700 grams of cocaine.
The trial court found that Guerrero's sudden change of lanes without signaling provided a reasonable basis for the trooper stopping the car and that defendant's furtive movements provided a reasonable basis for the pat down search for weapons subsequent to the stop. Consequently, the court denied defendant's motion to suppress.
We agree with the trial court's conclusion that the troopers had an articulable and reasonable suspicion that Guerrero had committed several motor vehicle violations and therefore were justified in stopping the vehicle in which defendant was riding. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); State v. Murphy, 238 N.J. Super. 546, 554, 570 A.2d 451 (App.Div. 1990). However, *179 the State failed to show that a reasonably prudent person in the trooper's position "would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968). Therefore, the State did not establish any basis for conducting a protective search for weapons of Guerrero and defendant.
In Terry the Court held that "a police officer may in appropriate circumstances ... approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 907, and conduct a reasonable search for weapons if he is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. The Court said:
The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909 (citations omitted)].
More recent decisions of the Supreme Court have repeated that the prerequisite to a Terry search for weapons is a reasonable belief that the suspect is armed. See, e.g., Adams v. Williams, 407 U.S. 143, 147-48, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612, 618 (1972) (Terry search justified where informant told police officer that an individual seated in a nearby vehicle was carrying narcotics and possessed a handgun, and the suspect failed to comply with the police officer's direction that he open the door of his car); Pennsylvania v. Mimms, 434 U.S. 106, 112, 98 S.Ct. 330, 334, 54 L.Ed.2d 331, 337-38 (1977) (Terry search justified where police observed a bulge in the jacket of traffic offender which they reasonably feared might be a weapon); Michigan v. Long, 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1221 (1983) (Terry search of drunk *180 driver justified after police observed large hunting knife on floorboard of driver's side of car).
Similarly, in State v. Thomas, 110 N.J. 673, 542 A.2d 912 (1988), the leading New Jersey case dealing with protective searches for weapons incident to investigatory stops, the Court emphasized that "whether there is good cause for an officer to make a protective search incident to an investigatory stop is a question separate from whether it was permissible to stop the suspect in the first place." Id. at 678-79, 542 A.2d 912. The Court also noted that "[n]othing in Terry can be understood to allow a generalized `cursory search for weapons' or, indeed, any search whatever for anything but weapons." Id. at 679, 542 A.2d 912 (quoting Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238, 247 (1979)). To justify a protective search, there must be "an objectively reasonable suspicion that a suspect is armed and dangerous." State v. Thomas, supra, 110 N.J. at 679, 542 A.2d 912.
Our courts have applied these principles in the context of routine stops for motor vehicle offenses in a number of recent cases. In State v. Lund, 119 N.J. 35, 573 A.2d 1376 (1990), a trooper observed a driver commit several motor vehicle violations. The trooper signalled the car to stop and as the driver was pulling over, the trooper observed a front seat passenger turn around and reach toward the rear seat. When the trooper approached the car, he observed a windbreaker in the area of the rear seat towards which the passenger had reached. In addition, the driver appeared to be extremely nervous. As a result, the officer ordered both the driver and passenger out of the car and searched the back seat. This search revealed a manila envelope containing cocaine. The State attempted to justify the search as a protective search for weapons. However, the Court concluded that the State had failed to establish a specific particularized basis for an objectively reasonable belief that the defendants were armed and dangerous:
There is evidence in this case that the suspects appeared nervous. Nervousness and furtive gestures may, in conjunction with other objective facts, justify *181 a Terry search, but ordinarily "[m]ere furtive gestures of an occupant of an automobile do not give rise to an articulable suspicion suggesting criminal activity." State v. Schlosser, 774 P.2d 1132, 1137 (Utah 1989); see Spence v. State, 525 So.2d 442 (Fla. Dist. Ct. App. 1988) (leaning down as if putting something on floor did not justify officer's suspicion of criminal activity); People v. Mills, 115 Ill. App.3d 809, 71 Ill.Dec. 247, 450 N.E.2d 935 (1983) (defendant's moving fast and leaning forward as officer approached did not create reasonable suspicion justifying even a stop); People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal. Rptr. 729, 478 P.2d 449 (1970) (passenger's putting her arm over the back seat, then facing forward and bending down, then resuming normal position did not support probable cause to search). [Id. at 47, 573 A.2d 1376].
In State v. Lipski, 238 N.J. Super. 100, 569 A.2d 272 (App. Div. 1990), a driver was discovered asleep in the back seat of his car parked on the shoulder of an interstate highway. Smelling an odor of alcohol on the driver's breath, the trooper asked him to exit the vehicle and conducted a pat down search for weapons which revealed a small quantity of marijuana. We held that defendant's motion to suppress should have been granted, because the State failed to show that the police had a reasonable belief that he was armed and dangerous:
In the event the pat-down here constituted the officer's routine procedure on ordering an occupant to exit his vehicle, we are satisfied that application of these principles clearly requires suppression of the evidence seized from defendant's person. The officer had no reason to believe defendant was armed or dangerous and recited no facts which could have given rise to such a belief. Defendant had not been arrested, and at the time of the pat-down, there was no probable cause to arrest. Nor were there any other circumstances reasonably suggesting to the officer that a frisk was warranted for his self-protection. As we read Pennsylvania v. Mimms and Michigan v. Long, an officer ordering an occupant out of a vehicle during a traffic stop may not pat him down routinely and without a reasonable belief, based on the circumstances, that he is armed or dangerous. [Id. at 104, 569 A.2d 272].
This case is quite similar to Lund. As in Lund, the troopers stopped Guerrero's vehicle for a routine motor vehicle violation, at which point a passenger made a "furtive" movement within the vehicle. As in Lund, that movement did not give the troopers reason to believe that defendants were armed and dangerous and the State failed to show any other circumstances which might have warranted such a belief. Indeed, the fact that the troopers left Trimino unattended in the rear seat of the *182 vehicle while conducting pat down searches of Guerrero and defendant indicates that the troopers did not perceive that the occupants of the vehicle posed a threat to their safety. Since we find no basis in this record to support a finding that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909, the pat down searches of Guerrero and defendant were illegal.

II
We turn next to whether the illegality of the searches of Guerrero and defendant requires the suppression of the evidence subsequently obtained and the reversal of defendant's conviction. The applicable principles are well established. "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 454 (1963). However, evidence is not subject to exclusion "simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455 (citation omitted). "[T]he `dissipation of the taint' concept that the Court has applied in deciding whether exclusion is appropriate in a particular case `attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost.'" United States v. Leon, 468 U.S. 897, 911, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677, 691 (1984) (quoting from concurring opinion of Justice Powell in Brown v. Illinois, 422 U.S. 590, 609, 95 S.Ct. 2254, 2264, 45 L.Ed.2d 416, 430 (1975)); see also *183 Nix v. Williams, 467 U.S. 431, 441-48, 104 S.Ct. 2501, 2507-08, 81 L.Ed.2d 377, 386-90 (1984); State v. Sugar, 108 N.J. 151, 156-57, 527 A.2d 1377 (1987). The determination whether evidence has been obtained by means that are sufficiently independent to dissipate the taint of illegal police conduct generally is based on three factors "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." State v. Johnson, 118 N.J. 639, 653, 573 A.2d 909 (1990) (citing Brown v. Illinois, supra, 422 U.S. at 603-04, 95 S.Ct. at 2261-62, 45 L.Ed.2d at 427). We apply these principles first to defendant's convictions for hindering apprehension and resisting arrest and then to his conviction for possession of cocaine with the intent to distribute.

A
There is a solid line of authority in other jurisdictions holding that an illegal detention or search ordinarily will not bar a conviction for an assault, escape or other unlawful response committed by the person subjected to the unlawful police action. See United States v. Bailey, 691 F.2d 1009, 1012-19 (11th Cir.1982), cert. denied, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); Ellison v. State, 410 A.2d 519, 526-27 (Del. Super. Ct. 1979), aff'd o.b., 437 A.2d 1127 (Del. 1981), cert. denied, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982); Commonwealth v. King, 389 Mass. 233, 449 N.E.2d 1217, 1225-26 (1983); State v. Brown, 784 S.W.2d 903, 905 (Mo. Ct. App. 1990); People v. Townes, 41 N.Y.2d 97, 390 N.Y.S.2d 893, 896-97, 359 N.E.2d 402, 405-06 (1976); State v. Saavedra, 396 N.W.2d 304 (N.D. 1986); State v. Gaffney, 36 Or. App. 105, 583 P.2d 582, 584 (Ct.App. 1978); State v. Miskimins, 435 N.W.2d 217, 219-22 (S.D. 1989); see generally 4 Wayne R. LaFave, Search & Seizure, A Treatise on the Fourth Amendment, § 11.4(j) at 458-61 (2d ed. 1987). The essential rationale of this line of cases is set forth in Bailey:

*184 [W]here the defendant's response is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct.... Unlike the situation where in response to the unlawful police action the defendant merely reveals a crime that already has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct. [691 F.2d at 1017].
Cf. California v. Hodari D., ___ U.S. ___, ___, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 698 (1991) ("Unlawful orders will not be deterred ... by sanctioning through the exclusionary rule those of them that are not obeyed.").
Similar considerations are present in this case. Although the troopers violated the Fourth Amendment rights of defendant and Guerrero by subjecting them to pat down searches for weapons, defendant and Guerrero did not have a right to resist the searches or the troopers' subsequent efforts to place them under arrest. And since defendant's physical confrontation with the troopers created a high potential for causing injury to the officers, the need to protect the troopers' safety outweighed whatever marginal deterrent to police misconduct might be provided by immunizing defendant's actions from criminal liability.
The Supreme Court's opinion in State v. Johnson, supra, 118 N.J. 639, 573 A.2d 909, furnishes implicit support for this conclusion. In Johnson the Court held that evidence of a murder suspect's escape during a lengthy illegal police detention was inadmissible at his trial for murder because it was tainted by the State's illegal conduct. However, the Court strongly implied that the illegal detention would not have barred defendant's conviction for escape in a separate prosecution.[1] *185 The Court noted that the Appellate Division had relied upon a line of cases which hold that an escape following an illegal police detention is an intervening act, and concluded that:
When holding that the incriminating evidence was admissible to prove the new offense, the courts understandably held that the escape itself was an intervening circumstance between the illegal detention and that evidence. In none of these cases, however, was the incriminating evidence admitted to establish the offense for which the defendant had been illegally detained. [Id. at 657-58, 573 A.2d 909 (citations omitted)].
Applying the distinction the Court relied upon in Johnson, it is clear that defendant's convictions for resisting arrest and hindering apprehension were for new offenses committed subsequent to the unlawful pat down searches and therefore were not subject to the taint of that police misconduct.
In sum, the decisive factor supporting admission of the evidence of defendant's resisting arrest and hindering apprehension is the "intervening circumstance" of defendant's voluntary commission, subsequent to the illegal police conduct, of new criminal offenses with a high potential for causing injury to law enforcement officers. This "intervening circumstance" marks "the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." United States v. Leon, supra, 468 U.S. at 911, 104 S.Ct. at 3414, 82 L.Ed.2d at 691.

B
The more difficult question is whether the illegal pat down searches of Guerrero and defendant require the suppression of the cocaine which they threw over the guardrail and the reversal of defendant's conviction for possession of cocaine with the intent to distribute.
*186 Guerrero threw a dollar bill containing cocaine residue over the guardrail during and in direct response to the illegal pat down search conducted by Trooper DeMaio. Therefore, the discovery of the cocaine in the dollar bill was a direct result of the illegal search and the evidence thus obtained should have been suppressed. See United States v. Beck, 602 F.2d 726 (5th Cir.1979); State v. Lemmon, 318 Md. 365, 568 A.2d 48, 56 (1990); see generally 1 Wayne R. LaFave, Search & Seizure, A Treatise on the Fourth Amendment, § 2.6(b) at 471-72 (2d ed. 1987).
On the other hand, defendant did not discard the cocaine in the paper bag in direct response to unlawful police conduct. The pat down search of defendant had been completed before defendant threw the paper bag over the guardrail. Furthermore, the paper bag was not in his possession but rather in the car. Thus, defendant had to voluntarily return to the car, in violation of Trooper DeAngelis' direction to stand with his hands on the car, and retrieve the bag, before he could dispose of this evidence.
We hold that these actions by defendant were sufficiently independent of the prior illegal pat down searches to warrant the conclusion that the discovery of the cocaine in the paper bag did not directly result from the police misconduct. To be sure, the troopers' illegal pat down searches and defendant's retrieval and disposal of the cocaine occurred in close temporal proximity, which is one factor supporting suppression of the evidence thereby revealed. See State v. Johnson, supra, 118 N.J. at 653-56, 573 A.2d 909. However, there are other more weighty factors which lead us to conclude that the discovery of the cocaine was not tainted by the prior illegal searches. The stop of the car in which defendant was riding and the police order to defendant to get out of the car were lawful. Pennsylvania v. Mimms, supra, 434 U.S. at 109-11, 98 S.Ct. at 332-33, 54 L.Ed.2d at 336-37. Thus, the only police misconduct consisted of the pat down searches, and the paper bag containing the *187 cocaine was not located on the persons of either Guerrero or defendant but rather in the car, which was not subject to an unlawful search. Furthermore, defendant gained access to the bag only by disobeying a lawful police order that he remain outside the car. Therefore, there was a significant break in the chain of causation between the illegal searches and the discovery of the cocaine.
An additional factor supporting the admission of the cocaine in the paper bag is that the police misconduct was not flagrant. See State v. Johnson, supra, 118 N.J. at 658-59, 573 A.2d 909. The pat down searches of Guerrero and defendant were conducted prior to our decision in Lipski and the Supreme Court's decision in Lund, at a time when it was the general understanding of many law enforcement agencies that the kind of "furtive" movements made by defendant provided a sufficient basis for a pat down search for weapons. Thus, this is not a case like Johnson, in which the Court characterized the police misconduct as "antediluvian." 118 N.J. at 658, 573 A.2d 909. Therefore, the cocaine in the paper bag was revealed by conduct of the defendant which was sufficiently independent of the pat down searches to be purged of the illegality of that police action and was admissible at trial.
We also conclude that the cocaine in the paper bag was admissible on another alternative basis. As concluded in section IIA of this opinion, Guerrero was lawfully arrested for resisting arrest and hindering apprehension. Consequently, the police could have properly searched the interior compartment of his car incident to the arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Thus, were it not for the fact that defendant had previously disobeyed Officer DeAngelis' order and returned to the car to retrieve the bag, the paper bag containing the cocaine would have been revealed by a search of the car subsequent to Guerrero's arrest. Therefore, the cocaine in the paper bag would inevitably have been discovered pursuant to a search incident to Guerrero's lawful *188 arrest after he physically resisted the pat down search and for this reason the evidence was not a fruit of the prior police misconduct. See United States v. Sheppard, 901 F.2d 1230, 1235-36 (5th Cir.1990) (defendant's unlawful flight subsequent to initial illegal search "function[s] to break any nexus" between police misconduct and search conducted subsequent to his apprehension); United States v. Bailey, supra, 691 F.2d at 1012-19 (defendant's response of fleeing illegal arrest is new crime for which defendant may constitutionally be arrested and evidence obtained incident to second, lawful arrest is not subject to taint of prior illegal arrest); Commonwealth v. King, supra, 449 N.E.2d at 1225-26 (defendant's assault upon police officers in response to illegal frisk "broke the chain of causation and dissipated the taint of the prior illegality" and thus the evidence obtained by a search of defendant incident to his arrest for the assault was admissible); cf. State v. Sugar, supra, 108 N.J. at 156-57, 527 A.2d 1377.
Finally, we conclude that the trial court's error in denying defendant's motion to suppress the residue of cocaine in the dollar bill discarded by Guerrero was harmless, because that evidence could not have had any prejudicial effect in light of the fact that the much larger quantity of cocaine found in the paper bag was properly admitted into evidence. See Chambers v. Maroney, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-82, 26 L.Ed.2d 419, 429 (1970); United States v. Singh, 811 F.2d 758, 762 (2d Cir.), cert. denied, 483 U.S. 1021, 107 S.Ct. 3264, 97 L.Ed.2d 763 (1987); United States v. Molt, 615 F.2d 141, 145-46 (3d Cir.1980).
Affirmed.
NOTES
[1] In fact, defendant pled guilty to two offenses arising out of the escape. Id. at 659, 573 A.2d 909.