**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1395-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TRAVON X. JOHNSON,

     Defendant-Appellant.

_____

Submitted March 25, 2025 – Decided April 21, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jerey, Law Division, Sussex County, Indictment Nos. 22-04-0070 and 22-04-0071.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ashley T. Brooks, Assistant Deputy Public Defender, of counsel and on the briefs.)

Matthew J. Platkin, Attorney General, attorney for respondent (Thomas R. Clark, Deputy Attorney General, of counsel and on the brief.)

PER CURIAM

After a guilty plea, defendant Travon Johnson appeals from a judgment of conviction challenging both the trial court's denial of his motion to suppress evidence seized without a warrant and his sentence. After carefully reviewing the record and applicable principles of law, we affirm defendant's convictions and sentence, but remand to the trial court to amend the judgment of conviction to reflect defendant's correct jail credit and parole disqualifier consistent with this opinion.

I.

We discern the salient facts from the record. On February 9, 2022, at approximately 2:00 p.m., Sparta Police Officer Jonathan Poon was dispatched on reports of a silver Nissan Rogue (Nissan) with New York license plates, heading north, and driving erratically.

Officer Poon headed northbound and noticed "a vehicle that looked silver in color and [had] changed lanes without utilizing its [directional,]" surrounded by "multiple other vehicles on the highway," about a half mile ahead of him. While driving between seventy and eighty miles per hour (mph) to "catch up" to the vehicle, which he identified as a Chevrolet Impala (Chevrolet), Officer Poon saw the Chevrolet make a second lane change without using its directional, while other vehicles were nearby.

2

Officer Poon further increased his speed, at times traveling more than 100 mph in pursuit of the Chevrolet. While trying to apprehend the Chevrolet, Officer Poon briefly drove behind a silver Nissan with New York license plates, for about twenty to thirty seconds before the Nissan moved to the right lane. Officer Poon did not observe the Nissan commit any traffic violations.

As Officer Poon got closer to the Chevrolet, he observed the Chevrolet merge into the single lane in front of another vehicle without utilizing its directional. When Officer Poon activated his overhead lights, the Chevrolet turned off the roadway into a parking lot, "bouncing a little bit as if it was trying to come in abruptly and hit the brakes." Officer Poon pulled into the parking lot directly behind the Chevrolet, which was "dull-gold" in color with Pennsylvania license plates.

Officer Poon issued defendant a motor vehicle summons for careless driving, N.J.S.A. 39:4-97, and unsafe lane changes, N.J.S.A. 39:4-88(b). Since the officer did not have a radar reading of the vehicle's speed, he did not issue a speeding summons.

During the stop, Officer Poon received notification from the National Crime Information Center (NCIC) that the Chevrolet was suspected to be involved in an armed robbery in Newark which occurred the day prior. Based

3

on this information, Officer Poon requested backup and asked defendant to exit the Chevrolet. However, when he approached the police vehicle, defendant fled on foot. After an extensive pursuit, defendant was apprehended and arrested. While attempting to evade police, defendant discarded two handguns as he ran through the woods.

On January 12, 2023, defendant moved to suppress all evidence seized as a result of the motor vehicle stop. The trial court conducted an evidentiary hearing during which the court heard testimony from Officer Poon, reviewed videos from his body worn camera and motor vehicle recorder (MVR), and reviewed Officer Poon's incident report.

In denying the motion to suppress, the trial court issued a comprehensive written decision, finding Officer Poon "had reasonable and articulable suspicion to stop the vehicle," as follows:

> [Officer] Poon was able to provide uncontroverted testimony of what he observed . . . that the vehicle [in the distance] was traveling at a high rate of speed and making multiple lane changes and carelessly driving. This is further made evident by the [MVR] which shows the vehicle in the distance traveling at a high rate of speed and [Officer] Poon's testimony as well as the issuance of the two motor vehicle violations for careless driving and unsafe lane change[s]. In the light of day, the color difference [between] a tan vehicle and a silver vehicle is inconsequential. [Officer] Poon's testimony that his real time observations of a vehicle he

4

is approaching from behind are much larger than what one sees on a video screen are entirely credible, logical[,] and comport with everyday life experiences. He [] had significant opportunities to observe the erratic driving, the lane switching, the lack of a [directional,] and the sudden turn off into the . . . business parking lot. It was not until after he collected the vehicle credentials . . . [that he] found out . . . the car had been reported to have a connection to a robbery out of Newark the prior day.

Despite Officer Poon's inability to determine the Chevrolet's exact speed using radar, the trial court found the MVR depicted the Chevrolet "traveling at a high rate of speed as [Officer] Poon was driving fast (upwards of 100 mph) to catch up" to the vehicle.

The trial court further found Officer Poon was "justified in stopping the vehicle because he had a reasonable and articulable suspicion that the [Chevrolet] was being operated in a[n un]safe or unusual manner and[,] therefore[,] the stop was initiated to further investigate or to inquire about the well-being of the driver." The trial court found the driver of the Chevrolet "acknowledged some erratic driving," after Officer Poon told him why he was stopped.

The trial court found no Fourth Amendment violation and denied defendant's motion. Defendant pleaded guilty to unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); resisting arrest, N.J.S.A. 2C:29-2(a)(2); and to

5

being a certain person unlawfully possessing a weapon, N.J.S.A. 2C:39-7(b)(1), while preserving his right to appeal the denial of his motion to suppress.

On September 7, 2023, the court held a sentencing hearing. During the hearing, the court imposed a sentence of seven and a half years, subject to a five-year parole disqualifier, on two convictions: unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and for being a certain person unlawfully possessing a weapon, N.J.S.A. 2C:39-7(b)(1). The court imposed a sentence of eighteen months on the resisting arrest conviction, N.J.S.A. 2C:29-2(a)(2), with the three sentences to run concurrently. The court credited defendant with 574 days of jail time based on his confinement from February 10, 2022 through September 6, 2023.

This appeal followed, with defendant presenting the following arguments for our consideration:

> POINT I
>
> POON LACKED REASONABLE SUSPICION FOR THE STOP.
>
>> A. POON UNREASONABLY BELIEVED HE WAS PULLING OVER AN ERRATIC DRIVER COMPLAINED ABOUT BY ANOTHER DRIVER.
>>
>> B. POON'S UNREASONABLE BELIEF THAT HE HAD IDENTIFIED

THE ERRATIC DRIVER LED HIM TO UNREASONABLY BELIEVE THE CAR WAS CHANGING LANES WITHOUT ITS [DIRECTIONAL].

C.    EVEN ASSUMING THE OFFICER HAD REASONABLE SUSPICION THAT THE DRIVER TWICE CHANGED LANES WITHOUT USING THE [DIRECTIONAL], HE DID NOT HAVE REASONABLE SUSPICION THAT THE DRIVER MADE AN UNSAFE LANE CHANGE UNDER N.J.S.A. 39:4-88(B).

D.    NOR DID POON HAVE REASONABLE SUSPICION THAT THE DRIVER VIOLATED N.J.S.A. 39:4-126 BECAUSE THE PLAIN LANGUAGE OF THE STATUTE DOES NOT REQUIRE THAT DRIVER[S] USE A [DIRECTIONAL] BEFORE CHANGING LANES.    TO THE EXTENT THE STATUTE CAN BE CONSTRUED TO INCLUDE SUCH A REQUIREMENT, IT IS UNCONSTITUTIONALLY VAGUE AS APPLIED.

E.    POON DID NOT HAVE REASONABLE SUSPICION THAT THE DRIVER WAS DRIVING CARELESSLY.

F.    ALTHOUGH POON TESTIFIED THAT HE SAW THE SUSPECT CAR MERGE IN FRONT OF ANOTHER CAR WITHOUT USING ITS [DIRECTIONAL] AFTER POON DECIDED TO PULL THE SUSPECT CAR OVER, THIS

7

OBSERVATION DID NOT JUSTIFY A
STOP.

POINT II

A RESENTENCING IS REQUIRED BECAUSE THE
COURT DID NOT PROPERLY CONSIDER
[DEFENDANT'S] YOUTH AND INSTEAD USED IT
AGAINST HIM.  IN ADDITION, THE PAROLE
DISQUALIFIER IMPOSED ON THE UNLAWFUL
POSSESSION WITHOUT A PERMIT CONVICTION
IS ILLEGAL, AND [DEFENDANT] IS ENTITLED
TO ANOTHER DAY OF JAIL CREDIT.

We consider the arguments in turn.

II.

A.

Our review of a trial court's decision regarding a motion to suppress is limited.  State v. Ahmad, 246 N.J. 592, 609 (2021).  We ordinarily "defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record."  State v. Gomez, ___ N.J. Super. ___, ___ (App. Div. 2025) (quoting State v. Smart, 253 N.J. 156, 164 (2023)).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference."  Ibid. (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).  "Legal conclusions drawn

from those facts are reviewed de novo." Ibid. (citing State v. Radel, 249 N.J. 469, 493 (2022)).

"[Our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard," State v. Blackmon, 202 N.J. 283, 297 (2010), limited to consideration of:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

"[An] appellate court must not 'substitute its judgment for that of the sentencing court.'" Liepe, 239 N.J. at 370 (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).

B.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." Smart, 253 N.J. at 164-65 (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey

9

Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017). It is well-established, "[t]o justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." State v. Carter, 247 N.J. 488, 524 (2021) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)); see also State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehicular violation, no matter how minor, justifies a stop . . . .").

"To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion." State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)). "A court must consider 'the totality of the circumstances—the whole picture'" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). This analysis considers police officers' "background and training," including their ability to "make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. at 555 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

The State bears the burden of proving by a preponderance of the evidence that a motor vehicle stop is supported by a reasonable and articulable suspicion the driver is committing a motor vehicle violation. See State v. Atwood, 232 N.J. 433, 446 (2018). Further, "[t]he State need not prove that the suspected motor vehicle violation has in fact occurred . . . ." State v. Barrow, 408 N.J. Super. 509, 518 (App. Div. 2009) (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Rather, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 437-38 (2018).

C.

We discern no error with the trial court's finding that Officer Poon's observation of the Chevrolet's failure to use a directional when changing lanes and its excessive speed are credible, constituting an appropriate legal basis for stopping the vehicle. The trial court found Officer Poon's testimony was "sufficient and credible evidence" that he had "reasonable and articulable suspicion a motor vehicle violation" had occurred. While it was unclear from the MVR whether the Chevrolet used its directional when making lane changes,

A-1395-23

the trial court found Officer Poon's testimony credible and supported by the on-scene issuance of two summonses for careless driving and making unsafe lane changes without using a directional. The trial court's credibility findings belie defendant's argument, raised for the first time on appeal, that Officer Poon impermissibly engaged in confirmation bias where "[h]e was looking for and expecting to find a car that matched the description given by dispatch[] and therefore assumed that the car he thought looked like that car must have been driving erratically."

We are equally unpersuaded the trial court erred in finding that Officer Poon credibly testified the Chevrolet was driving at an excessive speed. Police officers are trained to estimate the speed of moving vehicles. Locurto, 157 N.J. at 471. A lay witness, including a police officer, can conclude whether "a car was moving fast or slow or give an estimate of its speed," when it is based on "adequate visual observation." Pierson v. Frederickson, 102 N.J. Super. 156, 162 (App. Div. 1968). Here, Officer Poon testified, "[t]he vehicle seemed to be going faster than most other vehicles on the highway." Based on this observation, and considering he had to drive more than 100 mph to catch up to the Chevrolet as borne out by the MVR, we discern no error in the trial court's credibility determination.

We are unpersuaded that any conflation of the statutes the Chevrolet violated by Officer Poon during his testimony is tantamount to a lack of reasonable suspicion to stop the vehicle. Prevailing law does not impose a duty on police officers to know the specific statute number a vehicle violates when initiating a motor vehicle stop. Rather, a police officer is merely required to have reasonable suspicion that the driver "'is committing a motor-vehicle violation' or some other offense." Carter, 247 N.J. at 524 (quoting Scriven, 226 N.J. at 33-34); see also Bernokeits, 423 N.J. Super. at 370 ("A motor vehicle violation, no matter how minor, justifies a stop . . . .").

Officer Poon had reasonable suspicion to stop defendant's vehicle based on his observations of the Chevrolet making lane changes without using its directional and driving at an excessive speed. Thus, the stop of defendant's vehicle was lawful, and the trial court's denial of defendant's suppression motion is affirmed.

D.

We are unconvinced that the trial court erred because N.J.S.A. 39:4-126 does not require a driver to use a directional when changing lanes. Since defendant failed to raise this issue before the trial court, we review for plain error and discern none on this record.

A-1395-23

We consider issues raised for the first time on appeal only where plain error is established. R. 2:10-2. Under that standard, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." Ibid.; see also State v. Singh, 245 N.J. 1, 13 (2021).

N.J.S.A. 39:4-126, states as follows:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway . . . , or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway, or start or back a vehicle unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
>
> A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

N.J.S.A. 39:4-126 unambiguously triggers the duty to use a directional when moving right or left on a roadway where "any other traffic may be affected" by an unsignaled turn. "Other traffic" may include an officer's vehicle, Williamson, 138 N.J. at 304, or other nearby vehicles, State v. Moss, 277 N.J. Super. 545, 547 (App. Div. 1994). "Motorists in the vicinity whose movements

14

may be affected must be made aware of a driver's intentions." Williamson, 138 N.J. at 304.

While the statute does not explicitly use the phrase "changing lanes," the phrase "move right or left upon a roadway" encompasses the movements necessary for a vehicle to change from one lane to another. See State v. Garland, 270 N.J. Super. 31, 42-43 (App. Div. 1994) ("Defendant committed a motor vehicle violation by failing to signal while changing lanes . . . ."); State v. Casimon, 250 N.J. Super. 173, 178 (App. Div. 1991) (agreeing with the trial court's conclusion that the defendant's "sudden change of lanes without signaling provided a reasonable basis for the trooper" to stop the car).

### III.

Employing the standards articulated in Blackmon, we find the trial court's application of the facts to the law has not resulted in a clear error of judgment or a sentence that "shocks the judicial conscience." Blackmon, 202 N.J. at 297 (citing State v. Roth, 95 N.J. 334, 363-65 (1984)).

At defendant's sentencing hearing, the court found only mitigating factor fourteen "worthy of any consideration" since, at the time of the offense, defendant was under the age of twenty-six. However, the court found defendant's age was "counterbalanced" by "the fact that [defendant] ha[d] really

15

been engaging in criminal activity, and antisocial activity from the time he was still a juvenile . . . and then that just continued right after he turned [eighteen] with the adult charges that he faced." The court held, "the aggravating factors without any question . . . clearly, and substantially outweigh the mitigating factors."

The sentencing court did not consider defendant's youth as an aggravating factor. Rather, the court considered defendant's significant prior criminal record, which included two adjudications as a juvenile and two adult convictions resulting in jail sentences, when evaluating defendant's risk of re-offense under aggravating factor three.

Defendant's reliance on State v. Rivera, 249 N.J. 285 (2021), to support his request for re-sentencing is misplaced. In Rivera, the Court held a defendant's youth is only a mitigating factor and prohibited its consideration as an aggravating factor. Id. at 303. The Rivera Court speculated the defendant would have engaged in other criminal conduct but did not have the opportunity to do so because of her youth. Id. at 302. Here, the trial court did not rely on youth to reach any impermissible conclusion.

The State acknowledges defendant's jail credits were miscalculated by one day and that the violation of N.J.S.A. 2C:39-5(b) was subject to a specific parole

16

disqualifier. N.J.S.A. 2C:43-6(c), only permits a judge to impose a forty-five-month disqualifier, which is one-half of the seven and one-half year sentence on that conviction. Since the State concedes defendant is entitled to an additional day of jail credit, and that the trial court applied the incorrect parole disqualifier for defendant's conviction of unlawful possession of a weapon, we direct the trial court to enter an amended judgment of conviction correcting the parole disqualifier and amending the jail credit to 575 days.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We affirm the conviction and sentence, but remand to the trial court to amend the judgment of conviction to incorporate defendant's correct jail credit and parole disqualifier consistent with this opinion.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

17                                                            A-1395-23