236 N.J. Super. 537 (1989)
566 A.2d 550
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JAMES WOODSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1989.
Decided November 28, 1989.
*538 Before Judges ANTELL, BILDER and ASHBEY.
John G. Holl, Assistant Attorney General, Acting Bergen County Prosecutor, attorney for appellant (Susan W. Sciacca, Special Deputy Attorney General, Acting Assistant Prosecutor, of counsel and on the letter brief).
Melli & Doyne, attorneys for respondent (Peter E. Doyne, on the letter brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
By our leave granted, the State appeals from an order dated August 19, 1988, suppressing certain contraband material for use as evidence at trial. According to the undisputed facts, defendant's automobile was stopped by State Troopers on the New Jersey Turnpike on October 7, 1987, at 12:36 a.m., after being clocked at 70 m.p.h. in a 55 m.p.h. speed zone. Trooper *539 McHugh, who had been riding as a passenger in the police car, approached defendant's vehicle and opened the passenger's door to speak to defendant driver. He had made no preliminary attempt to communicate with either of the two occupants whom he observed within the car. As McHugh opened the door, an open can of beer, which had been resting between the front seat and the passenger's door, fell out of the car. Because the presence of an open container of alcoholic beverage in the car constituted a violation of the Motor Vehicle Act, N.J.S.A. 39:4-51a, McHugh looked about the interior of the vehicle for other such containers. That search disclosed on the front seat between the driver and the passenger a clear plastic bag of brownish-green vegetation which McHugh reasonably believed to be marijuana. The trooper ordered the passenger, Anthony Turner, and defendant out of the car, and in the ensuing search of their persons seized unspecified quantities of controlled dangerous substances. The State's evidence does not suggest that Trooper McHugh opened the car door out of concern for his safety or that there was cause for such concern.
Our starting proposition is that although lessened expectations of privacy attend the interior of an automobile, "it remains the law that motor vehicles constitute areas of privacy of persons and effects within the general protection of the Fourth Amendment and our own Constitution." State v. Slockbower, 79 N.J. 1, 7 (1979). See also State v. Patino, 83 N.J. 1, 10 (1980).
The suppression order followed the trial judge's finding that the opening of the car door constituted a warrantless search which did not come within any of the recognized exceptions to the rule requiring the suppression of evidence seized during the course of such a search. See State v. Ercolano, 79 N.J. 25, 42 (1979); State v. De Lorenzo, 166 N.J. Super. 483, 487-488 (App.Div. 1979). The State now argues that the trial judge erred in determining that the action of Trooper McHugh in opening the car door was impermissible, that this conduct *540 violated no constitutional strictures and that the suppression order should therefore be reversed. The State's argument relies substantially upon the decision of the Supreme Court of the United States in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). It was there held that police officers are free to require drivers to step out of their vehicles whenever they have been stopped for traffic violations. We have already given formal recognition to such authority. See State v. Wanczyk, 201 N.J. Super. 258, 264 (App.Div. 1985); State v. Nittolo, 194 N.J. Super. 344, 346 (App.Div. 1984). Here, however, the question is not whether police may order occupants out of a car, but whether they act legally by opening a car door without permission, without reasonable warning and without first trying to speak with the driver.
The State argues that the difference between ordering occupants out of a car on the one hand and opening the car door on the other is meaningless and should not control the outcome of this appeal. To support its argument it cites the language of the Supreme Court of Minnesota in State v. Ferrise, 269 N.W.2d 888 (Minn. 1978). There, an officer seized an illegal firearm which he discovered inside a motor vehicle after opening the passenger's door without permission. The Court there rejected any attempted distinction between those facts and the facts considered in Mimms, in the following language:
Operationally then, there is little practical difference between ordering the driver to open his door and get out of his car, on the one hand, and opening the door for the driver and telling him to get out, on the other. [269 N.W.2d at 890].
We respectfully disagree. There is a significant difference between ordering one out of a car and opening a car door without warning. In the former case, the occupant has an opportunity, before opening the door and leaving the car, to safeguard from public view matters as to which he has a privacy interest. Suddenly opening a car door is unconstitutionally intrusive because the police officer thereby surprises *541 the occupant when the latter is entitled to consider his private affairs secure from outside scrutiny.
Nor can the seizure of the evidence be validated on the reasoning that the open beer can and the marijuana were in plain view. The plain view exception to the search warrant requirement applies only where the officer is lawfully in the viewing area and where the evidence is "inadvertently" discovered. Coolidge v. New Hampshire, 403 U.S. 443, 465-468, 470, 91 S.Ct. 2022, 2037-2040, 29 L.Ed.2d 564, 582-585, reh'g. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); State v. Bruzzese, 94 N.J. 210, 236 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). Neither condition is present here. Opening the door sufficiently partakes of an "exploratory investigation," State v. Griffin, 84 N.J. Super. 508, 517 (App.Div. 1964), as to constitute a search. Since, as we have said, that search was illegal the officer was not lawfully in the viewing area when he observed the open beer can and the bag of marijuana. The discovery of the marijuana was clearly not inadvertent; it was the product of a search, since the officer testified that he discovered it while inspecting the car's interior for additional beer. The discovered contraband need not have been the direct object of the search in order to categorize its discovery as other than inadvertent.
We conclude that the seizure of the controlled dangerous substances was violative of the Fourth Amendment to the Constitution of the United States and Art. I, Par. 7, of the New Jersey Constitution.
Affirmed.