238 N.J. Super. 100 (1990)
569 A.2d 272
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STEPHEN F. LIPSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 19, 1989.
Decided January 22, 1990.
Robert J. Adinolfi, attorney for appellant (Leonard Pitock, on the brief).
Samuel Asbell, Camden County Prosecutor, attorney for respondent (Alfred Durney, Assistant Prosecutor, of counsel and on the letter brief).
Before Judges PRESSLER, LONG and LANDAU.
*101 PER CURIAM.
Following denial of his motion to suppress evidence seized from his person in a warrantless search, defendant pleaded guilty to a charge of possession of less than 50 grams of marijuana in violation of N.J.S.A. 2C:35-10(a)(4). He now appeals from the order denying his suppression motion pursuant to R. 3:5-7(d). We reverse and vacate the conviction.
The sole witness testifying at the hearing on the suppression motion was the state trooper who made the arrest. According to his testimony, he and his partner were on routine patrol on I-295 shortly after 2:00 a.m. on December 14, 1987, when they saw an apparently abandoned vehicle on the side of the road. They approached the vehicle, looked in, and saw defendant "laying in the back of the van with two beer bottles in the center console." The trooper described defendant as "unconscious," but he was able to arouse him after banging several times on the side of the van. Defendant then crawled into the driver's seat, produced his credentials as requested, and explained that he had pulled over to rest as he was tired and was not sure he could make it home. Smelling the odor of alcohol on defendant's breath, the trooper asked him to exit the vehicle. Defendant did so, and "at that time a pat down was conducted for my safety and Trooper Nixon's safety and a hard object was felt in his left jacket pocket." The object turned out to be a tightly rolled plastic bag containing a small amount of marijuana. Defendant identified the package as his "pot"; he was arrested, handcuffed, given Miranda warnings, and transported to police headquarters where a breathalyzer test resulted in a reading of .01 percent blood alcohol. No balance or coordination tests were administered at the scene.
In explaining the reason for the pat-down, the trooper candidly asserted on cross-examination that he made no judgment from defendant's "demeanor and his attitude" which led him to believe defendant was either armed or dangerous. Rather, he said, "[w]e are trained to act on every stop the same way, handle *102 a stop the same way with same caution on every stop." He further testified that his general instructions required that "any time I am going to demonstrate balance tests to that individual, yes, conduct a pat down for my safety."
We are satisfied that there is some degree of ambiguity in the officer's explanation. That is, it is not entirely clear whether he intended to testify that a pat-down is routinely conducted on every stop when the occupant is ordered to exit the vehicle or is routinely conducted as a precautionary measure only before demonstrating balance tests at the scene to an occupant suspected of driving under the influence of drugs or alcohol. In any event, the officer's conduct here was consistent with either interpretation. We are moreover satisfied that a routine pat-down in either circumstance would be constitutionally objectionable on the facts here present.
The issue before us is whether it is consistent with the Fourth Amendment, when there are no facts or circumstances supporting an objective or even a subjective concern by the officer for his safety, for a police officer, after ordering a driver he suspects of intoxication to exit his vehicle, to then pat him down. We conclude that constitutional principles as articulated by the United States Supreme Court interdict a routine pat-down absent the officer's belief that the suspect may be armed or dangerous. Thus, in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Supreme Court found constitutionally permissible the frisking of an occupant of a vehicle who was ordered to exit the car because the officer then observed a bulge in the occupant's pocket and believed it to be a revolver. The Court first confirmed the right of an officer making a traffic stop to order the occupants of the vehicle to exit it, explaining that:
We think it too plain for argument that the State's proffered justification  the safety of the officer  is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Terry v. Ohio, supra, [392 U.S. 1] at 23, 20 L.Ed.2d 889, 88 S.Ct. 1868, 44 Ohio Ops.2d 383. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person *103 seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings  A Tactical Evaluation. 54 J.Crim. LC & PS 93 (1963).  " Adams v. Williams, 407 U.S. 143, 148 n 3, 32 L.Ed.2d 612, 92 S.Ct. 1921 [1924 n. 3] (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. United States v. Robinson, 414 U.S. 218, 234, 38 L.Ed.2d 427, 94 S.Ct. 467 [476], 66 Ohio Ops.2d 202 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." Id., at 234 n 5, 38 L.Ed.2d 427, 94 S.Ct. 467 [476 n. 5], 66 Ohio Ops.2d 202.
The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations. Rather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and off onto the shoulder of the road where the inquiry may be pursued with greater safety to both. [434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337 (footnote omitted)]
However, the Court also made clear that once the occupant is out of the vehicle, the propriety, in constitutional terms, of the officer's pat-down and frisk is to be determined by the standards prescribed by Terry v. Ohio, supra, namely the officer's belief that the occupant presents a threat to his safety. As the Court explained:
We have as little doubt on this point as on the first; the answer is controlled by Terry v. Ohio, supra. In that case we thought the officer justified in conducting a limited search for weapons once he had reasonably concluded that the person whom he had legitimately stopped might be armed and presently dangerous. Under the standard enunciated in that case  whether "the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate  there is little question the officer was justified. The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of "reasonable caution" would likely have conducted the "pat-down." [Id. at 111-112, 98 S.Ct. at 334, 54 L.Ed.2d at 337-338 (footnote omitted)]
The principles explicated in Pennsylvania v. Mimms were reaffirmed by the Supreme Court in Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court there noting that "police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous." 463 U.S. at 1047-1048, 103 S.Ct. *104 at 3480, 77 L.Ed.2d at 1219 (emphasis added). And see State v. Wanczyk, 201 N.J. Super. 258, 493 A.2d 6 (App.Div. 1985) (pat-down justified when an occupant of a vehicle stopped for cause was ordered to exit the automobile and a cylindrically-shaped bulge in his sleeve was observed). Cf. State v. Bell, 195 N.J. Super. 49, 477 A.2d 1272 (App.Div. 1984), and State v. Nittolo, 194 N.J. Super. 344, 476 A.2d 1253 (App.Div. 1984) (suspect in traffic stop properly frisked incident to lawful warrantless arrest). And see generally as to the dictates of the Terry standard, State v. Thomas, 110 N.J. 673, 542 A.2d 912 (1988). See also State v. Woodson, 236 N.J. Super. 537, 566 A.2d 550 (App.Div. 1989); State v. Carter, 235 N.J. Super. 232, 561 A.2d 1196 (App.Div. 1989).
In the event the pat-down here constituted the officer's routine procedure on ordering an occupant to exit his vehicle, we are satisfied that application of these principles clearly requires suppression of the evidence seized from defendant's person. The officer had no reason to believe defendant was armed or dangerous and recited no facts which could have given rise to such a belief. Defendant had not been arrested, and at the time of the pat-down, there was no probable cause to arrest. Nor were there any other circumstances reasonably suggesting to the officer that a frisk was warranted for his self-protection. As we read Pennsylvania v. Mimms and Michigan v. Long, an officer ordering an occupant out of a vehicle during a traffic stop may not pat him down routinely and without a reasonable belief, based on the circumstances, that he is armed or dangerous. The officer had no such belief here and, hence, was not at liberty to pat defendant down.
We consider next the question of whether the pat-down was constitutionally permissible if it was conducted as routine precaution taken by the officer before demonstrating balance tests. We appreciate that that situation may indeed pose special risks to the officer, who may not be able to keep the occupant under observation while he is showing him what to do. But while we recognize a potential special risk to the officer *105 inherent in that situation, we are nevertheless satisfied that Terry standards continue to apply. Consequently, the self-protective need to pat down and frisk in this situation also depends upon the particular circumstances, including, for example, the number of occupants as compared to the number of officers at the scene. Here there was one occupant and two officers, a fact indicating that the occupant, not otherwise believed to be dangerous or armed, could have been kept under precautionary observation by one officer while the other demonstrated the tests. We are therefore constrained to conclude that considerations of self-protection of the officer did not justify this pat-down even though in other circumstances it might have been constitutionally permissible.
The order denying the motion to suppress is reversed. The judgment of conviction is vacated, and we remand for retrial.