243 N.J. Super. 528 (1990)
580 A.2d 740
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SYLVESTER CONQUEST, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1990.
Decided October 1, 1990.
*529 Before Judges J.H. COLEMAN, DREIER and LANDAU.
Richard E. Incremona, Assistant Prosecutor, argued the cause for appellant (John Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, Assistant Prosecutor, of counsel; David J. DeFillippo, Legal Assistant, on the letter brief).
Thomas J. Mallon argued the cause for respondent (Thomas J. Mallon on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This matter comes before us on leave granted to the State to contest an interlocutory order which suppressed evidence uncovered incident to a traffic stop of a car operated by defendant-respondent Sylvester Conquest.
On September 7, 1989 at approximately 6:00 p.m., Trooper Michael McDonnell was on patrol in Asbury Park, New Jersey, in the area of Washington and Ridge Avenues. At that time he noted a 1988 Chevrolet bearing New Jersey registration going west on Washington Avenue. The vehicle made a right turn from Washington Avenue to Ridge Avenue without making a complete stop and without using its directional signals. That *530 intersection is governed by a stop sign for vehicles travelling on Washington Avenue.
After observing the traffic violations, Trooper McDonnell followed the vehicle a short distance and activated his overhead lights. The vehicle turned left from Ridge Avenue to Monroe Avenue, left again from Monroe to Myrtle Avenue and pulled into a driveway at 516 Myrtle Avenue. That driveway served what was later determined to be the home of the son of Sharon Ivory, Conquest's passenger. Trooper McDonnell estimated that the entire pursuit of the vehicle took thirty seconds, noting that the distance travelled was very short.
As the vehicle stopped, the driver, later identified as Conquest, immediately exited and approached Trooper McDonnell's patrol car. McDonnell asked Conquest for his driving credentials. He noted that Conquest was "very nervous, and his hands were shaking, and he wanted to know why he was being stopped." While Conquest was producing his credentials, McDonnell observed the passenger in the front seat bend out of sight for approximately three seconds towards the driver's side of the vehicle. When this occurred, the trooper promptly made a safety pat down of Conquest, with negative results. He then approached the vehicle and ordered Ivory to exit, opening the passenger door as he did so. She complied with McDonnell's order, and identified herself. When McDonnell ordered her out of the vehicle he saw a "white vial with suspected C.D.S. on the floor." He stated that the vial was "just below where her feet would be if she was sitting straight up." He described it as a clear glass vial with a white substance, approximately an inch and a half long, "a common crack vial."
McDonnell conducted a safety pat down of Ivory, handcuffed both occupants and placed them under arrest. He then searched the vehicle, but found nothing else.
Conquest was indicted for possession of C.D.S. under N.J.S.A. 2C:35-10a(1) and N.J.S.A. 2C:35-10. The trial judge granted a defense motion to suppress evidence of the crack vial, *531 interpreting our opinion in State v. Woodson, 236 N.J. Super. 537, 566 A.2d 550 (App.Div. 1989), to hold that McDonnell had an insufficient basis to order Sharon Ivory from the vehicle or to open the passenger door. Based on that analysis, he suppressed evidence of the crack vial observed on the car floor as Ivory exited. We disagree and reverse.
In State v. Lipski, 238 N.J. Super. 100, 105, 569 A.2d 272 (App.Div. 1990), cited in State v. Lund, 119 N.J. 35, 49, 573 A.2d 1376 (1990), we recognized the importance of considering the particular circumstances, notably the number of occupants compared to the number of officers on the scene, in evaluating the reasonableness of protective measures taken by an officer during a valid motor vehicle stop. Here, we are not called upon to determine whether the pat-downs were proper, as in Lipski, nor are we called upon to determine whether a vehicle search was proper, as in Lund.
The first question before us is whether it was constitutionally permissible for Trooper McDonnell to order Ivory out of the car after he observed her bend over to the floor while he was dealing with Conquest. It must be remembered that the driver, Conquest, immediately and independently exited the car after pulling into the driveway, so that McDonnell was precluded from the ability to simultaneously observe both occupants. We disagree with the trial judge's conclusion that "looking at it from the calm cool of the courtroom without being in the hurley burley of the streets" there was no reasonable basis for Trooper McDonnell's fear for his safety. The officer articulated the factors which influenced his judgment:
(1) Conquest's action in immediately leaving the vehicle, thereby keeping McDonnell away from it;
(2) Conquest's excessive nervousness; and
(3) The disappearance from sight of Sharon Ivory in the front seat while McDonnell was talking to Conquest.
As to (3), McDonnell testified, "... at that point, I didn't have any time to really [sic] as I am talking to him taking his credentials seeing him standing shaking and seeing her bend *532 out of sight. I am worried about me. I am not worried about a traffic violation ..." and "At that point, I thought she could have been hiding a weapon for one thing. I never got a chance to walk up to the car. There could have been an odor of contraband in there or open container. That is one reason why someone might get out of the car and walk to me quickly. I experience that a lot." It was established that the stop occurred in a "high drug" area.
Asked whether his walking over to get Ivory from the car was for the purpose of checking for contraband, McDonnell responded, "No, my own safety. Her bending over making a movement, I couldn't see what she was doing. It is not a common movement a motorist makes. I could see that if the driver is moving over for a glove box, but the glove box is in front of her. She shouldn't be making any motion because Mr. Conquest had the credentials."
The trooper testified that under the circumstances, Ivory's bending down to do something he didn't know and which had no apparent reason increased the risk of the stop.
Were these factors sufficient to make objectively reasonable Trooper McDonnell's request for Ivory to leave the car? Considering the fact that McDonnell was alone (See Lipski, 238 N.J. Super. at 105, 569 A.2d 272), the grim statistics cited in Lund, 119 N.J. at 37, 573 A.2d 1376, and the holding of the United States Supreme Court in Pennsylvania v. Mimms, 434 U.S. 106, 109-110, 98 S.Ct. 330, 332-333, 54 L.Ed.2d 331 (1977), as interpreted in State v. Woodson, 236 N.J. Super. 537, 566 A.2d 550 (App.Div. 1989); State v. Carter, 235 N.J. Super. 232, 561 A.2d 1196 (App.Div. 1989); State v. Wanczyk, 201 N.J. Super. 258, 493 A.2d 6 (App.Div. 1985); State v. Bell, 195 N.J. Super. 49, 477 A.2d 1272 (App.Div. 1984); and State v. Nittolo, 194 N.J. Super. 344, 476 A.2d 1253 (App.Div. 1984), we unhesitatingly answer "yes" to this limited inquiry. Our analysis has been based, not on the viewpoint of a Monday-morning observer from the safety of a "calm, cool courtroom" but upon what was *533 objectively reasonable for an experienced, trained, but solitary police officer in a high crime zone at that time and place. The trooper could not be charged with awareness that the driveway into which the vehicle had been driven was that of a person known to the occupants, and both the driver and passenger were acting suspiciously. As previously observed, the questioned intrusion involved less than a vehicle or body search, and even the propriety of the pat downs is not implicated in this suppression motion.
The second question to be addressed is whether our holding in Woodson, supra, was properly applied in this case. In Woodson we held that while a police officer could order occupants to exit from a car stopped for a traffic violation, the car door could not be opened suddenly, without permission or warning, and without first trying to speak to the driver. See Woodson, supra, 236 N.J. Super. at 540, 566 A.2d 550. Judge Antell's opinion emphasized the importance of affording to an occupant the opportunity, "before opening the door and leaving the car, to safeguard from public view matters as to which he has a private interest."
In the present case, there can be no assertion of surprise, sudden action or even lack of warning. The cumulative conduct of both driver and passenger precipitated the exit order to Ivory and the protective door opening[1] only after McDonnell spoke to the driver and observed furtive movement. Thus, the Woodson factors of surprise, lack of warning, lack of time, and absence of prior conversation with the driver are not here present. Moreover, the lone trooper had an articulable reason for wanting to observe both of Ivory's hands as the passenger door was opening.
Thus, both the order to exit and the method of effectuating it were proper. The contraband was not fruit either of an unlawful *534 pat down, body search, or vehicle search. Here, the crack vial was seen in plain view on the floor as Ivory exited. Its discovery was inadvertent and constitutional.
We reverse the order of suppression and direct that the suppressed crack vial be admissible, subject to the rules of evidence. The matter is remanded for trial accordingly.
NOTES
[1] Officer McDonnell testified that he wanted to be able to see her hands at the time she was exiting.