741 A.2d 104 (1999)
326 N.J. Super. 234
STATE of New Jersey, Plaintiff-Respondent,
v.
John JONES, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Richard J. Freeman, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 4, 1999.
Decided December 3, 1999.
*105 Ivelisse Torres, Public Defender, for defendant-appellant Jones (Donna M. Gayle, Designated Counsel, of counsel and on the brief).
Ivelisse Torres, Public Defender, for defendant-appellant Freeman (James Anderson, Designated Counsel, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, for plaintiff-respondent (John J. Scaliti, Assistant Prosecutor, of counsel and on the brief).
Before Judges HAVEY, KEEFE and LINTNER.
The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
These cases, consolidated for the purposes of appeal, arise from an order of the trial court denying defendants' motions to suppress evidence seized from an automobile owned by defendant Richard Freeman and driven by defendant John Jones. Both defendants were tried by a jury and found guilty of first degree possession of controlled dangerous substance with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) & (b)(1), (Count One), and third degree possession of controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1), (Count Two).[1] Defendant Jones was sentenced to a custodial term of eleven years with a three year, eight month period of parole ineligibility and defendant Freeman was sentenced to a custodial term of forty-five years with fifteen years of parole ineligibility.
The central issue raised is essentially whether the odor of alcohol, combined with *106 the admission of consumption of one bottle of beer by a motor vehicle operator, is sufficient to establish probable cause to search the vehicle for open containers of alcohol where a trained police officer testifies that, based upon the circumstances and his experience, occupants often possess open containers of alcohol.
Both defendants contend that the trial court erred in denying their motions to suppress. We agree and reverse.[2]
The undisputed facts are as follows. On June 27, 1996 at 5:42 p.m., during rush hour, Jones was operating Freeman's Mercury Sable on the northern end of the New Jersey Turnpike in the southbound inside lane. Freeman was seated in the right front passenger seat and Michael Gonzalez was seated in the rear. At the time, Trooper Antonio Casais was traveling behind the defendants when he observed defendants' vehicle make a lane change from the left lane to the middle lane without displaying a turn signal.
Having observed no signal, Trooper Casais activated his overhead lights in order to effectuate a motor vehicle stop. According to Trooper Casais, the driver pulled the car over to the shoulder approximately fifteen seconds after the trooper had activated his overhead lights, having traveled approximately two-tenths of a mile. Trooper Casais then alerted headquarters of the stop, after which he approached defendants' vehicle on the driver's side. He asked Jones for his credentials. After producing his license, Jones activated his directional signal in response to the trooper's request. Though the blinker gave an audible signal, the dashboard light was not working. At Trooper Casais's direction, both he and Jones went to the back of the vehicle where both observed that the blinker light was working.
After speaking with Jones, at the rear of the vehicle, Trooper Casais detected an odor of alcohol on Jones's breath, as a result of which he asked Jones if he had been drinking. Jones responded "I'm not going to lie to you because I had a bottle of Heineken." At this point in time, backup Troopers Osiliva and Hemely arrived. After conducting a pat-down search of Jones which revealed no weapons, Trooper Casais directed Freeman and Gonzalez to exit the vehicle. Both passengers were searched for weapons, none were found. While the three occupants of the vehicle were waiting behind the Mercury with the two backup troopers, Trooper Casais commenced a search for open containers of alcohol by going to the driver's side of the vehicle and looking in the immediate area of the driver's seat for alcohol containers. Underneath the driver's seat he found a plain plastic bag containing a white substance which he believed to be cocaine. The driver and both passengers were placed under arrest and given their Miranda warnings.[3]
Trooper Casais returned to the car to conduct a further search. On the right front floor in front of the passenger seat he found a black plastic bag containing a zip-lock bag with a larger quantity of cocaine. Underneath the front arm rest a brown bag containing 500 zip lock bags was found. The subsequent tests performed by the State Police laboratory revealed that the bag underneath the driver's seat contained .48 ounces of cocaine while the bag on the front passenger floor contained 5.82 ounces of cocaine.
*107 The trial judge found that the smell of alcohol on Jones's breath, combined with his admission of consumption of beer, his apparent nervousness, his failure to use the turn signal, and what Trooper Casais believed was an unusually long time to stop the vehicle, established probable cause on the part of a trained police officer to believe that a violation of law had been or was committed, namely the possession of open containers of alcohol. We disagree.
Defendant Jones questions the validity of Trooper Casais's stop under State v. Williamson, 138 N.J. 302, 650 A.2d 348 (1994), arguing that the Trooper Casais never testified that other traffic was affected by Jones's lack of signaling. Trooper Casais testified that the stop occurred on a Thursday during rush hour and that there were quite a few cars on the road at that time. He could not say whether the stop affected other traffic on the roadway or where such traffic was in relation to defendants' vehicle. He further indicated that his vehicle was following the defendants at a distance that he approximated to be 100 to 200 yards.
N.J.S.A. 39:4-126 requires a motorist to signal a lane change "in the event any other traffic may be affected by such movement." In Williamson, supra, 138 N.J. at 304, 650 A.2d 348, our Supreme Court pointed out that it is unnecessary to prove that a motor vehicle violation occurred to justify a stop for failure to signal. The trooper need only have "a reasonable and articulable suspicion" that the driver's failure to signal is "to some degree likely to" affect traffic. Id. at 304, 650 A.2d 348 (quoting State v. Moss, 277 N.J.Super. 545, 547, 649 A.2d 1349 (App. Div.1994)). Here, the rush hour traffic conditions were sufficient to support an articulable and reasonable basis for concluding that the unsignaled lane change might have an effect on other vehicles.
The question then becomes whether the search of the motor vehicle was justified. Generally, a warrantless search is presumed to be invalid. State v. Bruzzese, 94 N.J. 210, 218, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). To justify a warrantless search, once there is a valid stop, the Fourth Amendment of the United States Constitution and art. I, ¶ 7 of the New Jersey Constitution require that the conduct of the officer who undertook the search was objectively reasonable without regard to underlying motives or intent. Bruzzese, supra, 94 N.J. at 219-21, 463 A.2d 320 (1983). Under the automobile exception, a warrantless search of a motor vehicle is sustainable as reasonable if there exists probable cause to believe the vehicle contains contraband or evidence of a crime. State v. Colvin, 123 N.J. 428, 429-30, 587 A.2d 1278 (1991); State v. Pierce, 136 N.J. 184, 204, 642 A.2d 947 (1994). Probable cause is measured by the objectively reasonable standard and is derived from the factual circumstances present at the time of the search. The relevant factors are neither technical nor based upon the actions of legal technicians. They are instead the factual and practical realities of everyday life which form the basis upon which reasonable and prudent persons act. United States v. Kelly, 961 F.2d 524, 527 (5th Cir.1992).
In order to meet the objectively reasonable standard there must be a well-grounded suspicion that the vehicle contains contraband or evidence that an offense has been committed. While probable cause has been described as an "elusive concept incapable of being precisely defined," it is less than the evidence necessary to convict but more than "a mere naked suspicion." State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972) (citing State v. Mark, 46 N.J. 262, 271, 216 A.2d 377 (1966)).
In State v. Judge, 275 N.J.Super. 194, 205, 645 A.2d 1224 (App.Div.1994), we found the same facts that established probable cause to arrest justified a warrantless search of a motor vehicle in accordance *108 with the automobile exception where the operator was stopped initially for speeding. The facts in Judge, supra, while distinguishable, are instructive. Upon stopping, defendant Judge opened the driver's window as the trooper approached. While standing beside the driver's window, the trooper smelled, what he believed from his experience to be, the odor of burnt marijuana. A subsequent search of the vehicle and occupants revealed marijuana and drug paraphernalia. We found that, given the trooper's experience, his discovery of the odor of burnt marijuana lead to a reasonable suspicion that an offense had been committed, thereby establishing the existence of probable cause and validating the search. In explaining our rationale, we differentiated the smell of marijuana from the odor of alcohol emanating from either the passenger compartment or driver by pointing out that, unlike the use of marijuana, the use of alcohol is not a per se violation of the law. Id. at 202, 645 A.2d 1224. See also State v. Vanderveer, 285 N.J.Super. 475, 667 A.2d 382 (App.Div.1995) (affirming a similar search leading to the discovery of cocaine where the defendant was standing on a front porch and the officer detected the smell of marijuana).
In State v. Schubert, 235 N.J.Super. 212, 561 A.2d 1186 (App.Div.1989), certif. denied, 121 N.J. 597, 583 A.2d 302, cert. denied, 496 U.S. 911, 110 S.Ct. 2600, 110 L.Ed.2d 280 (1990), we dealt with the issue of probable cause as it related to a vehicle search based in part on the existence of an open container of alcohol. In Schubert, supra, the defendant had been placed under surveillance as a result of a complaint that he might have been involved in an arson. After following the defendant for some time, the officer observed the defendant park his car at the side of the road and turn off his lights. The officer approached the car on foot and asked the defendant why he had stopped. Smelling an odor of alcohol on the defendant's breath, the officer asked the defendant to exit the vehicle. When the defendant opened the door, the officer detected a strong odor of gasoline and observed an open can of beer on the console. The officer then searched the trunk looking for gasoline and found a folding infant's bicycle. The bicycle turned out to be material evidence in the arson case. The defendant appealed the arson conviction contending in part that the search of the trunk was improper. We found, under the circumstances, the odor of alcohol combined with the observation of the open container established a reasonable basis to suspect that the defendant was intoxicated. Id. at 224-25, 561 A.2d 1186. The fact that the defendant was wanted for questioning pertaining to the arson and the strong smell of gasoline combined to establish probable cause to search the trunk.
In State v. Woodson, 236 N.J.Super. 537, 566 A.2d 550 (App.Div.1989), we affirmed the trial court's order to suppress where the trooper conducted a search that revealed controlled dangerous substance after stopping a vehicle for speeding. In Woodson, supra, the trooper, after stopping the vehicle walked up to the passenger's door and opened it without any preliminary communication with either of the two occupants. Upon opening the door, an open beer can which had been lodged between the passenger seat and the door fell out of the car. The trooper then looked about the interior of the car and saw a clear plastic bag on the front seat which he believed to contain marijuana. After ordering occupants out of the vehicle, he searched the interior and found an unspecified amount of controlled dangerous substance.
Starting with the proposition that the law treats interiors of motor vehicles as areas of privacy of person and effects, we pointed out that there was a significant difference between ordering a person out of the car and opening a door without permission. We held that the sudden opening of the door was an unconstitutional intrusion. Id. at 541, 566 A.2d 550. We concluded that had the open beer can been *109 within the lawful viewing area of the officer (plain view), as he approached the vehicle, then a different result would have been justified.
While there are no reported New Jersey cases with facts similar to those before us, there are decisions in other jurisdictions that provide us with some guidance. In United States v. McGuire, 957 F.2d 310 (7 th Cir.1992), a trooper noticed a vehicle in his rearview mirror which he thought might be speeding. He pulled off to the median and stopped. As the car passed, he noticed that it had no taillights. The trooper pulled back onto the highway. While pursuing the car, the trooper noticed the passenger-defendant bend forward as if he was placing something on the floor under his seat. He thought this movement suspicious. After stopping the vehicle and learning that it belonged to the passenger, the trooper went to the passenger side whereupon the defendant passenger and trooper opened the door simultaneously, the window being inoperable. A brown paper bag was then spotted by the trooper at which point he asked the defendant to hand it to him and the defendant complied. The brown paper bag contained a half-empty bottle of malt liquor. The driver and defendant were asked to exit the car and the trooper conducted a search of the car for other open containers of alcohol. The search revealed another brown bag containing marijuana which then lead to a search of the trunk which turned up cocaine.
After concluding that the defendant voluntarily handed the bag containing the bottle of malt liquor to the trooper thereby representing a consent to open the bag, the Seventh Circuit focused upon the issue of warrantless search and whether the arresting officer had probable cause, under the circumstances, to have the occupants exit the vehicle and search the interior. Quoting from the District Court below, the Circuit Court noted that once an open container is found, "it is all downhill from here." Id. at 314. In reaching its determination that under the circumstances presented there was a fair probability that the car contained other evidence, the Court said that "once Trooper Newman discovered that McGuire was transporting open alcoholic liquor in violation ... of ... law, he had probable cause to believe that the car contained additional contraband or evidence." Ibid.
In Kendrick v. Nelson, 448 F.2d 25 (9 th Cir.1971), the defendant was stopped for the minor traffic violation of lack of sufficient license plate illumination. After stopping the vehicle the officer noticed an open container of beer on the front seat. The officer asked the driver to step to the rear of the car to observe the lack of illumination. When the defendant was asked for his registration, he told the officer it was in the vehicle. The officer instituted a search of the vehicle for more alcohol and the registration and found a clip of a .30 caliber rifle in the glove compartment. The officer then was told by the defendant that the rifle was in the trunk and consented to allowing the officer to see the rifle. Upon opening the trunk, the officer found a movie projector that had been previously reported stolen from a local school. The Ninth Circuit found that probable cause would exist to search for further evidence of open containers notwithstanding the issue presented concerning the registration. See also People v. Carter, 163 Cal.App.3d 1183, 210 Cal.Rptr. 103 (1985) (the California Court of Appeals justified the entry into the defendant's automobile to search for additional open containers of alcohol where an open bottle of beer was viewed by the arresting officer from outside the vehicle).
Here, as in Woodson, supra, 236 N.J.Super. at 541, 566 A.2d 550, there was no justification for searching the interior for an open container. The record before us is completely devoid of facts which support a reasonable suspicion that defendants Jones and Freeman possessed open containers of alcohol to establish probable cause necessary to conduct a search of the *110 interior of the vehicle. The odor of alcohol the Trooper detected on Jones's breath, together with his nervousness and admission concerning the consumption of one beer, does not, when viewed with the other existing circumstances, establish a well-grounded suspicion that either Jones or his passengers had open containers of alcohol in the vehicle in violation of N.J.S.A. 39:4-51a. Unlike the facts in the above cited cases, there was no initial observation of an open container in Freeman's vehicle.
A naked suspicion is one without any reasonable basis in fact. Here, the Trooper's suspicion that the occupants of the vehicle had open containers is at best a mere hunch and, therefore, no better than a naked suspicion. The rush hour traffic conditions which justified the stop also would justify the defendant driver's prudent gradual, rather than immediate, pull off to the shoulder. The nervousness of the driver, considering the fact of the stop itself, along with his consumption of alcohol, is expected. The mere smell of alcohol and admission of consumption may not, by itself, warrant a sobriety test, let alone a search of the vehicle for open containers. Had the Trooper observed open containers in plain view or any outward signs such as spilled alcohol when he asked the driver for his identification, a further search of the vehicle including the passenger area would have been warranted. However, justification of the search under these facts would have the effect of permitting a search of the interior of every motor vehicle which is stopped for a minor motor vehicle violation, where the driver admits to having consumed one bottle of beer. Such a search goes beyond the bounds permitted and does not pass constitutional muster.
We conclude that the seizure of the controlled dangerous substances and drug paraphernalia was violative of the Fourth Amendment of the Constitution of the United States and art. I, ¶ 7 of the New Jersey Constitution.
The trial court's orders denying the motions to suppress the evidence of controlled dangerous substance and drug paraphernalia are reversed. The judgments of conviction are reversed and the matters are remanded for a further proceedings as to both defendants.
NOTES
[1] The trial judge pursuant to R. 3:15-3(a)(2), also found Freeman guilty of the disorderly persons charge of possession of drug paraphernalia, and Jones guilty of the disorderly persons charges of possession of marijuana and possession of drug paraphernalia.
[2] Freeman contends that the sentence imposed was excessive and that he was a victim of a racially motivated profile stop. Given this court's determination to reverse, the issues raised concerning the sentence imposed by the trial court need not be addressed. No motion was made before the trial court to dismiss nor has there been any record developed supporting the contention of selective prosecution. Accordingly, that issues is not properly before us. State v. Marain, 322 N.J.Super. 444, 447, 731 A.2d 109 (App.Div. 1999).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).