748 A.2d 1125 (2000)
330 N.J. Super. 1
STATE of New Jersey, Plaintiff-Appellant,
v.
Reginald MATTHEWS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2000.
Decided March 20, 2000.
*1126 Laura M. Lynch, Assistant Prosecutor, for plaintiff-appellant (John G. Laky, Warren County Prosecutor, attorney; Ms. Lynch, on the brief).
Carolann M. Fritz, Assistant Deputy Public Defender I, for defendant-respondent (Ivelisse Torres, Public Defender, attorney; Ms. Fritz, on the brief).
Before Judges PETRELLA and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
As a result of a motor vehicle stop, defendant, a passenger in the car, was indicted for possession of cocaine, N.J.S.A. 2C:35-10a(1), possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3), and conspiracy to commit those offenses, N.J.S.A. 2C:5-2. A complaint charging possession of marijuana, which arose from the same circumstances, was remanded to municipal court. Defendant moved to suppress the narcotics on the sole ground that the officer was not entitled to open the car door. Although the trial court found the arresting officer credible, it nonetheless entered an order suppressing the evidence, finding that the officer violated defendant's constitutional rights under article I, paragraph 7 of the New Jersey Constitution when he opened the passenger door to speak to defendant. On leave granted to the State, we reverse because we are satisfied that the officer's conduct was reasonable in all respects and therefore permissible.
On January 11, 1999, around 11 p.m., New Jersey State Trooper Stan Morgievich was patrolling Route 80 in a marked vehicle when he observed a speeding car in the middle lane with two men in the front seat who were not wearing seat belts. After Morgievich activated his overhead emergency lights, the other vehicle swerved to the right lane, slowed, swerved onto the right shoulder, and eventually came to a stop. The occupants sat "slumped in their seats." Morgievich approached the driver, told him he was in violation of the laws governing speeding and seat belts, and asked for credentials, which showed the car was not registered to either occupant. Without prompting, the driver began to explain where he was coming from. A strong smell of alcohol appeared to be coming from the back of the car. Morgievich ordered the driver to the rear of the car. He described the driver as "very incoherent, excited, [and] nervous," but he did not smell alcohol on his breath.
Morgievich turned his attention to the defendant because he wanted to speak to him about his violation of the seat belt law. As he approached the passenger door, he noticed an "empty beer can located right on the ground below the passenger door." That, combined with his earlier observation that the car smelled from alcohol, led *1127 him to believe that he should further investigate whether the occupants had violated N.J.S.A. 39:4-51a, prohibiting an open container of alcoholic beverage in a car. The passenger window was closed, and the defendant was "seated upright ... [,] awake [,] and ... looking straight ahead." Morgievich, who was standing "[s]lightly in front of defendant and "could see his eyes," knocked two or three times on the window to get defendant's attention. When there was no response, the trooper "opened the door to speak with him."
After again detecting a strong odor of alcohol coming from the car, Morgievich asked for identification. The defendant then
turned his body and put his legs out on the ... ground and simultaneously, deceptively in my opinion, stuck his left hand into his jacket pocket, pulled out an object, and attempted to conceal it under the armrest. And began rambling aboutsomething about his injured leg.
Morgievich became "concerned with [defendant's] hands" because the "hands are what can kill you." He also noted "a strong odor of alcoholic beverage coming from his breath...." Based on these circumstances, Morgievich asked defendant to step from the car and "patted him down for weapons." The defendant was unarmed. Morgievich then looked at the front passenger seat and saw "a digital scale box and a black plastic bag and a small paper bag." He picked up the black plastic bag and asked the defendant if he knew what it was. The defendant denied knowledge. Morgievich described the bag as "soft, light, and smell[ing] like detergent." At that point, the trooper believed he had probable cause to believe the bag contained drugs because "detergent is a common way to disguise drugs and [because of defendant's] deceptive actions to conceal that object and [the presence of] the scale." Consequently, Morgievich called for backup, and once help arrived, he searched the car. On the front seat under the armrest, he found a bag with crack cocaine and marijuana. The black plastic bag contained marijuana and the small paper bag contained crack cocaine. The driver and defendant were placed under arrest and taken to Hope Station, where the police discovered that defendant also possessed a crack pipe.
As a preliminary matter, we note that under the Fourth Amendment of the United States Constitution it would appear that the police may order all occupants out of an automobile during a traffic violation stop. See Michigan v. Long, 463 U.S. 1032, 1047-48, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201, 1218-19 (1983) (interpreting Pennsylvania v. Mimms, 434 U.S. 106, 110-11, 98 S.Ct. 330, 332-33, 54 L.Ed. 2d 331, 336-37 (1977)). But, in State v. Smith, 134 N.J. 599, 615, 637 A.2d 158 (1994), the Court found that under the New Jersey Constitution a passenger has greater rights than the driver. Those greater rights, however, arise only when the passenger has not engaged in culpable conduct and the only reason for the police intervention is the traffic violation committed by the driver. Ibid. Even in that circumstance, an officer "with less than a reasonable suspicion that a passenger is engaged in criminal activity or is armed and dangerous, may reasonably order a passenger to step out of the car." Id. at 617, 637 A.2d 158. The officer may take that action when "able to point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation." Id. at 618, 637 A.2d 158.
Those principles fully warranted the officer's treatment of the defendant in this case. This defendant had engaged in culpable conduct by not wearing his seat belt, a violation of N.J.S.A. 39:3-76.2f. The car registration was in the name of someone not in the car, giving rise to the possibility that the car was stolen. The *1128 driver was extremely nervous, incoherent, and excited. A strong odor of alcohol emanated from the driver's open window, but the driver himself did not have alcohol on his breath. When the officer approached the passenger side of the car, he saw an empty can of beer on the ground immediately below the passenger's window, giving rise to the reasonable inference that the passenger had been drinking (since the driver's breath did not smell of alcohol) and had discarded the can while the officer was speaking to the driver at the rear of the vehicle, to avoid a charge of violating N.J.S.A. 39:4-51a. Finally, when the officer knocked on the window, the defendant, who was awake and looking forward, ignored the officer. These circumstances, even apart from the seat belt violation, which might in itself have justified an order to leave the car, see State v. Legette, 274 N.J.Super. 278, 281, 643 A.2d 1063 (Law Div.1994), although probably not a search of the car, see State v. Lark, 163 N.J. 294, 748 A.2d 1103 (2000), warranted heightened caution. Furthermore, the evidence supported a reasonable suspicion that the passenger had violated N.J.S.A. 39:4-51a, thereby probably justifying a search of the car for cans of beer of, for example, the same brand as that apparently discarded on the road. Since the officer was entitled to order defendant out of the car, he was equally entitled to open the door to accomplish that object.
State v. Woodson, 236 N.J.Super. 537, 566 A.2d 550 (App.Div.1989), on which defendant relies, is distinguishable. The only offense was speeding, there were no grounds for suspicion of any other offense, there were no articulable facts that would warrant heightened caution, and the first action taken by the police after bringing the car to a stop was to approach the passenger's door and open it without making any preliminary attempt to communicate with the occupants. It was in that context that the court said the following:
There is a significant difference between ordering one out of a car and opening a car door without warning. In the former case, the occupant has an opportunity, before opening the door and leaving the car, to safeguard from public view matters as to which he has a privacy interest. Suddenly opening a car door is unconstitutionally intrusive because the police officer thereby surprises the occupant when the latter is entitled to consider his private affairs secure from outside scrutiny.

[Id. at 540-41, 566 A.2d 550.]
The Woodson court's principle, set forth without reference to supporting case law, appears to be inconsistent with the Supreme Court's later decision in State v. Smith, supra, at least in the circumstance where, as here, the officer has articulable facts that would warrant heightened caution. In that situation, the officer should not have to signal his desire to speak with the passenger and wait while the passenger attempts to hide things, or possibly reaches for a weapon. In any case, Woodson is distinguishable because here the officer, after speaking with the driver, knocked on the window, thereby notifying the passenger of his desire to speak with him, and opened the door only when his implicit request that the window be rolled down was ignored. In short, this case does not involve the opening of a door without warning.
More pertinent than Woodson is State v. Conquest, 243 N.J.Super. 528, 580 A.2d 740 (App.Div.1990), cited with approval by the Court in State v. Smith, supra, 134 N.J. at 611, 637 A.2d 158, holding that the officer could properly open the door while at the same time ordering the passenger from the lawfully stopped vehicle where "[t]he cumulative conduct of both driver and passenger precipitated the exit order to [the passenger] and the protective door opening only after [the officer] spoke to the driver and observed furtive movement [by the passenger.]" Conquest, supra, 243 N.J.Super. at 533, 580 A.2d 740. In our *1129 view, the failure to respond to the officer's knock in the subject case, given the other circumstances, is analogous to the furtive movement in Conquest and should be treated no differently. The officer should not have to take the risk that the passenger was ignoring him while possibly contemplating some offensive action. In these circumstances, he was entitled to a reasonable response to his knock, and not receiving it, he was entitled to open the door.
Reversed and remanded for trial.