**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5292-18T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MELQUAN KENT and
MAURICE LOWERS,

    Defendants-Respondents.

_____

Submitted December 4, 2019 — Decided  December 19, 2019

Before Judges Koblitz, Whipple, and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 19-02-0173.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant (Stephen Christopher Sayer, Assistant Prosecutor, of counsel and on the brief).

Clarence J. Mattioli, Jr., attorney for respondent Melquan Kent.

Joseph E. Krakora, Public Defender, attorney for respondent Maurice Lowers (Dinaz Akhtar, Assistant Deputy Public Defender, on the brief).

PER CURIAM

On leave granted, the State appeals from a June 17, 2019 order granting defendants Melquan Kent's and Maurice Lowers' motion to suppress a gun and narcotics evidence seized pursuant to a motor vehicle stop. We affirm.

Millville City Police Detective Ryan Stroup was the sole witness to testify at the suppression hearing. He testified that in June 2018, he witnessed Lowers driving a car and Kent in the passenger seat. Stroup stated he knew Lowers had a suspended license because he "check[ed] constantly, different subjects who are regularly investigated." Therefore, he stopped the vehicle on suspicion of driving with a suspended license. Stroup obtained Lowers' credentials and returned to his vehicle to prepare a motor vehicle summons. Stroup checked with dispatch to confirm Lowers' license was suspended and began to write the motor vehicle summons.

In the meantime, other officers began to arrive at the scene. Prior to completing the summons, a canine unit appeared and began a canine sniff of the vehicle defendants occupied. Stroup testified he did not summon the canine unit but paused writing the summons and exited his vehicle to assist the other officers

and oversee the removal of defendants from the vehicle so officers could safely complete the canine sniff. Stroup believed his assistance was necessary because defendants were "very close associates of a very violent street gang . . . ."

When defendants exited the vehicle, both were patted down because "Lowers [was] known to be in possession of firearms in the past." During the pat-down, police observed the barrel of a handgun protruding from underneath the passenger seat, where Kent was sitting. Defendants were arrested. After the arrest, the canine sniff revealed the presence of narcotics in the vehicle. Police recovered narcotics from Lowers' person.

Defendants argued the evidence was seized unlawfully because the canine sniff was unrelated to, and prolonged, the motor vehicle stop. They argued police lacked probable cause to compel them to exit the vehicle, pat them down, and search the vehicle. The State argued the stop was not prolonged and it duration was "immaterial because as soon as [the canine] alerted, that car is going to be searched . . . [and] that gun is going to be located, so the discovery of the gun is inevitable at that point."

The motion judge disagreed the gun was inevitably discoverable. He stated:

> That's not the point at all. The point is, why are they being detained beyond the traffic stop? The officer

testified there was no reason to arrest them. They had no reason to hold them. There was no reason to detain.

And the problem is . . . that as soon as he stopped writing the ticket, that was a delay in the issuance of the summons and the delay was engendered by the sniff itself and there was no articulable suspicion of current criminal activity, even if he recognized . . . Lowers as a gang-affiliated individual.

The State raises the following points on appeal:

THE RULING OF THE LOWER COURT SHOULD BE DISTURBED IN THIS CASE, WHERE THAT COURT ERRED IN GRANTING THE MOTION TO SUPPRESS.

A. THE MOTOR VEHICLE STOP WAS NOT "PROLONGED" BY THE OFFICER'S DE MINIMIS MOMENTARY DIVERSION FROM COMPLETING THE TRAFFIC TICKET IN THIS CASE, AND THUS NO SEPARATE BASIS OF REASONABLE SUSPICION WAS REQUIRED IN ORDER TO VALIDATE THE SUBSEQUENT DISCOVERY OF EVIDENCE OBSERVED IN PLAIN VIEW FROM WITHIN THE MOTOR VEHICLE.

B. THE LOWER COURT ERRED IN SUPPRESSING THE EVIDENCE DUE TO THE DOCTRINE OF INEVITABLE DISCOVERY (NOT RAISED BELOW).

C. THE INTERESTS OF JUSTICE ARE NOT SERVED BY DISINCENTIVIZING OFFICERS FROM BEING MINIMALLY INTRUSIVE DURING TRAFFIC STOPS AND PRIORITIZING OFFICER SAFETY (NOT RAISED BELOW).

I.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). It does so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing Johnson, 42 N.J. at 162). However, legal conclusions are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010) (citation omitted); see also State v. Watts, 223 N.J. 503, 516 (2015).

A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar,

229 N.J. 521, 532 (2017). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)).

"[I]n those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed . . . stopping an automobile and detaining the driver in order to check his driver's license" is reasonable under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 663 (1979). During such a stop, police officers are permitted to "inquire 'into matters unrelated to the justification for the traffic stop.'" Dunbar, 229 N.J. at 533 (quoting Arizona v. Johnson, 555 U.S. 323, 333 (2008)). However, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015).

"Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." Id. at 1615. Absent articulable, reasonable suspicion, the unreasonable extension of a motor vehicle stop to conduct a canine sniff constitutes an unreasonable seizure. Id. at 1614-15 (holding that the time of the motor vehicle stop must be the time reasonable to complete "tasks tied to the

traffic infraction."). The New Jersey Supreme Court adopted this federal standard in Dunbar, 229 N.J. at 533-34.

The Dunbar Court held "an officer does not need reasonable suspicion independent from the justification for a  traffic stop . . . to conduct a canine sniff[,]" but reasonable suspicion is required if the canine sniff administration would "prolong[] a traffic stop beyond the time required to complete the stop's mission." Id. at 550. The articulable, reasonable suspicion must be independent from the underlying motor vehicle stop to be able to continue detention beyond the stop's mission to administer a canine sniff. Id. at 536; see also State v. Nelson, 237 N.J. 540, 554-55 (2019) (finding the officer had reasonable suspicion to justify the delay based upon the defendant's nervous behavior, conflicting explanations of his itinerary, a tip from ATF that someone fitting defendant's description would be transporting controlled dangerous substances, large bags in the cargo hold, the overwhelming odor of air freshener, and the defendant's prior record of narcotics arrests).

A motor vehicle stop can become an investigatory Terry[1] stop if circumstances give rise to an articulable, reasonable suspicion. See Nelson, 237 N.J. at 552. However, to conduct an investigatory stop of a motor vehicle, there

---

[1]  Terry v. Ohio, 392 U.S. 1 (1968).

A-5292-18T1

must be some objective manifestation the suspect was, or is, involved in criminal activity. State v. Arthur, 149 N.J. 1, 8 (1997). Independent, articulable, and reasonable suspicion is necessary because the law "discourage[s] the police from turning a routine traffic stop into a 'fishing expedition for criminal activity unrelated to the stop.'" Hornberger v. Am. Broad. Co., 351 N.J. Super. 577, 614 (App. Div. 2002) (citation omitted).

Stroup had articulable, reasonable suspicion for stopping defendants; namely, he knew the driver had a suspended license based on an inquiry he conducted in the recent past. However, there was no articulable, reasonable suspicion to conduct the canine sniff because there was no nexus between the motor vehicle violation and drug activity, or any circumstances evidencing possible drug use, or the presence of drugs. The canine unit's arrival on scene the prolonged, delayed, and ultimately interrupted the mission of the motor vehicle stop because Stroup ceased writing the summons, exited his vehicle, and aided the administration of the canine sniff. The judge's findings in this regard were not an abuse of discretion.

## B.

Unlawfully obtained evidence is admissible if the State can clearly and convincingly show the evidence would have been lawfully discovered

independently of the unlawful means.  State v. Maltese, 222 N.J. 525, 552 (2015).  The State must prove

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of the procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [State v. Sugar (III), 108 N.J. 151, 156-57 (1987) (quoting State v. Sugar (II), 100 N.J. 214, 235 (1985)).]

To determine whether evidence from an illegal search warrants suppression, courts focus on whether "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'"  Wong Sun v. U.S., 371 U.S. 471, 487 (quoting Nardone v. U.S., 308 U.S. 338, 341 (1939)).  The United States Supreme Court identified three factors courts should consider in that determination: (1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct.  Brown v. Ill., 422 U.S. 590, 603-04 (1975); see also State v. Lee, 190 N.J. 270, 278 (2007).

A-5292-18T1

The New Jersey Supreme Court held, if an officer's initial inquiries reveal the driver of a car does not have a valid license, an officer is justified in detaining the driver for a period to issue the summons and has an objective reasonable basis to detain the car and its occupants to assure the car is driven only by a properly licensed driver. State v. Hickman, 335 N.J. Super. 623 (App. Div. 2000). Additionally, in instances of driving with a suspended license, "arresting the driver is consistent with an officer's duty to make certain that the offender cannot continue to drive. Even if other licensed drivers are present, the severity of the penalties imposed . . . would ordinarily justify the arrest of a violator[,]" so long as such arrest would not violate the fundamental constitutional rights guaranteed to all citizens. State v. Piercer, 136 N.J. 184, 207 (1984).

Ordering a person out of a car during a traffic stop constitutes a seizure. State v. Davis, 104 N.J. 490, 498 (1986). A court must balance the driver's interest in privacy against the State's interest in protecting its police officers. Pennsylvania v. Mimms, 434 U.S. 106 (1977). The State's interest in protecting the safety of its officers far outweighs the driver's interests. Id. at 111. This applies to passengers as well. State v. Conquest, 243 N.J. Super. 528 (1990). In State v. Smith, the Court held, in some circumstances, with less than reasonable suspicion, police may order passengers out of a lawfully stopped

vehicle, if they believe the passengers are engaged in criminal activity and are armed and dangerous. 134 N.J. 599, 617 (1994).

Here, police had articulable, reasonable suspicion Lowers' license was suspended. However, the record lacks any evidence that Stroup intended to do anything other than issue Lowers a motor vehicle summons. Indeed, the State offered no testimony from Stroup of the steps he intended to take to assure Lowers did not drive the car away from the scene after receiving the motor vehicle violation. No evidence exists that Stroup intended to arrest Lowers for the motor vehicle violation, or either Lowers or Kent for criminal conduct. Defendants were removed solely because of the canine sniff, which was unsupported by reasonable, articulable suspicion.

Moreover, we disagree with the State's argument that it was unable to prove inevitable discovery because the motion judge restricted it from making the argument. As we noted, the State raised the inevitable discovery argument in summation. However, the judge properly found the argument did not apply because the State failed to adduce the necessary testimony to support it. For these reasons, the motion judge correctly concluded the weapon and narcotics were not inevitably discoverable.

A-5292-18T1

The remainder of the State's arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5292-18T1